```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JASON O. WATSON,

                    Plaintiff,                MEMORANDUM AND ORDER

       - against -                             17 Civ. 7098 (NRB)

USA TODAY SPORTS MEDIA GROUP, LLC,
US PRESSWIRE, LLC, and GANNETT CO.,
INC.,

                    Defendants.
------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Jason O. Watson alleges that defendants USA Today Sports Media Group, LLC ("SMG"), US Presswire, LLC ("USP"), and Gannett Co., Inc. ("Gannett," and, collectively with SMG and USP, "defendants") continued to display, market, license, and distribute his photographs after the termination of the Active Photographer Agreement (the "Agreement") that governed their commercial relationship, and asserts claims against defendants for copyright infringement, breach of contract, unjust enrichment, and unfair competition. Before the Court is defendants' motion to compel arbitration based on the Agreement's arbitration clause, which provides for arbitration of "any dispute arising under" the Agreement. Because each of plaintiff's claims arises under the Agreement, defendants' motion to compel is granted.

1

## I. BACKGROUND

Plaintiff is a professional sports photographer who entered into the Agreement with defendant USP on September 1, 2011. Amended Complaint ("AC") §§ 12, 15, ECF No. 24; Agreement, Penchina Decl. Ex. 1, ECF No. 34-1. The Agreement granted USP the right to license and distribute plaintiff's photography to third-party entities and individuals in exchange for compensation to plaintiff. AC § 15; Agreement ¶¶ 1, 5, 6. Paragraph 11(b) of the Agreement (the "Arbitration Clause") provides:

> Any dispute arising under this Agreement shall be determined and settled by arbitration in the Commonwealth of Virginia, pursuant to the rules of the American Arbitration Association. Any award rendered will be final and conclusive upon the parties hereto and judgment thereon may be entered in any court having jurisdiction over the parties and subject matter.

Agreement ¶ 11(b). Paragraph 11(k) of the Agreement (the "Survival Clause") states: "The provisions of this Agreement that by their nature or as specified hereunder are intended to continue beyond the expiration or termination of this Agreement, shall survive the expiration or termination hereof." Id. ¶ 11(k).

The Agreement had an initial five-year term, and would automatically renew for an additional five years unless either party gave the other written notice 60 days before the expiration date. AC § 18; Agreement ¶ 8. On August 24, 2015, plaintiff sent USP notice that he "wish[ed] for the Agreement to expire" on or before September 1, 2016. Letter from Jason O. Watson to USP,

2

Penchina Decl. Ex. 2, ECF No. 34-2. Plaintiff asked USP to remove all of his images from their systems "on or before September 1, 2017," id., which plaintiff characterizes as a "typographical error" that should have stated "on or before September 1, 2016." Mem. of Law in Opp'n, ECF No. 36, p. 5 n.1.

Plaintiff alleges that defendants continued to display and distribute his photographs after the date of the termination of the Agreement, identifying more than thirty allegedly unauthorized uses of his photographs that occurred between September 28, 2016 and October 4, 2017. AC ¶¶ 34-64. Plaintiff filed this action on September 18, 2017, and filed the operative amended complaint on November 29, 2017, asserting claims for copyright infringement, breach of contract, unjust enrichment, and unfair competition. Compl., ECF No. 1; AC. Defendants subsequently filed this motion to compel arbitration. ECF Nos. 32-34.

## II. DISCUSSION

It is axiomatic that the Federal Arbitration Act ("FAA") embodies an "emphatic federal policy" favoring arbitration. KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)). As such, the FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable,

3

and enforceable," 9 U.S.C. § 2, and that a party may petition the district court for an order directing that "arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

The Court must therefore answer two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). In deciding a motion to compel arbitration, we apply a standard similar to that applicable to a motion for summary judgment, considering all relevant, admissible evidence in the parties' submissions and drawing all reasonable inferences in favor of the non-moving party. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

Plaintiff concedes, as he must, that the Agreement contains a valid Arbitration Clause. See Mem. of Law in Opp'n, p. 6. As to the scope of the Agreement, the Court must first determine whether the Arbitration Clause is broad or narrow. See Louis

4

Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). Here, the Arbitration Clause provides that "[a]ny dispute arising under this Agreement shall be" arbitrated. Agreement ¶ 11(b). This provision is a paradigmatic "broad" arbitration clause. See Donner v. GFI Capital Res. Grp. No. 16 Civ. 9581 (CM), 2017 WL 2271533, at *3 (S.D.N.Y. May 2, 2017) ("'[A]ny disputes, differences or controversies arising under [the] Agreement shall be' arbitrated" is a broad arbitration clause); China Auto Care, LLC v. China Auto Care (Caymans), 859 F. Supp. 2d 582, 586-87 (S.D.N.Y. 2012) ("All disputes, claims or controversies arising under this Agreement . . . shall be finally settled by arbitration" constitutes a broad arbitration clause).

Plaintiff argues that the Arbitration Clause is not broad because it applies only to claims "arising under," and not claims "related to," the Agreement. This distinction lacks support in law or logic. The Second Circuit has given broad construction to similar arbitration clauses that provide for arbitration of claims "arising under" the relevant contract without any mention of claims "relating to" the contract. See, e.g., Genesco, Inc. v. T. Kakiuchi & Co. Ltd., 815 F.2d 840, 845, 854 (2d Cir. 1987) ("All claims and disputes of whatever nature <u>arising under</u> this contract . . . shall be referred to [arbitration].") (emphasis added); S.A Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984) ("Whenever any question or dispute shall <u>arise</u>

5

or occur under this [Agreement/Contract], such question or dispute shall . . . be finally settled by arbitration . . . .") (emphasis added); Donner, 2017 WL 2271533, at *3.

Plaintiff cites three cases - TradeComet.com LCC v. Google, Inc., 435 F. App'x 31 (2d Cir. 2011); Kelso Enters. Ltd. v. A.P. Moller-Maersk, 375 F. App'x 48 (2d Cir. 2010); and Consol. Precision Prods. Corp. v. Gen. Elec. Co., No. 15 Civ. 8721 (PKC), 2016 WL 2766662 (S.D.N.Y. May 12, 2016) - where courts gave broad construction to arbitration or forum selection clauses that included the phrase "arising under or related to." However, these decisions in no way circumscribe the breadth of an arbitration clause that applies to "any dispute arising under" the Agreement without the additional "related to" language sometimes found in other arbitration clauses.

Nor is our analysis affected by In re Kinoshita, 287 F.2d 951 (2d Cir. 1961), where the Second Circuit held that an arbitration clause that required arbitration "[i]f any dispute or difference should arise under" the parties' agreement was not broad. This "ancient and disfavored decision," Donner, 2017 WL 2713533, at *4, while not yet explicitly overturned by the Second Circuit, has been repeatedly and expressly limited to "its precise facts," S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984); see ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 26, 31-34 (2d Cir. 2002);

6

Genesco, 815 F.2d at 854; Battaglia v. McKendry, 233 F.3d 720, 725 (3d Cir. 2000) ("[The Kinoshita] line of cases has been discredited both in the Second Circuit and in other jurisdictions."); China Auto Care, 859 F. Supp. 2d at 586-87.

Given our finding that the Arbitration Clause is broad, "there arises a presumption of arbitrability," such that "all issues that 'touch matters' within the main agreement" shall be arbitrated. ACE Capital, 307 F.3d at 34. Applying this standard, and keeping in mind that the proper focus is on the "factual allegations in the complaint rather than the legal causes of action asserted," JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 173 (2d Cir. 2004), we address the arbitrability of each of plaintiff's claims seriatim.[1]

---

[1]   The parties did not brief the threshold issue of whether the Court or an arbitrator should decide in the first instance whether plaintiff's claims are arbitrable; both proceed on the assumption that the Court will do so. Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts, which may be rebutted where "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Sol. Co., 398 F.3d 205, 208 (2d Cir. 2005).

The Second Circuit has held that an arbitration clause that incorporates by reference the rules of the American Arbitration Association ("AAA"), such as the Arbitration Clause here, "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec, 398 F.3d at 208; see also Paduano v. Express Scripts, Inc., 55 F. Supp. 3d 400, 415 (E.D.N.Y. 2014) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (quoting Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases)).

However, in Litton Fin. Printing Div. v. Nat'l Labor Relations Bd., 501 U.S. 190, 208-09 (1991), the Supreme Court held that courts, not arbitrators,

7

## A. Breach of Contract

Most obviously, plaintiff's claim for breach of contract must be arbitrated. See, e.g., Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015). Indeed, it is difficult to imagine a hypothetical breach of contract claim that does not "arise under" the contract in question. Here, plaintiff alleges that he "has suffered harm due to Defendants' unlawful deliberate breach of their obligations related to and arising from Defendants' covenants, promises, agreements, and/or material representations to Watson." AC ¶ 104. As the Agreement is the only "covenant, promise, agreement, or material representation" between the parties identified in the amended complaint, any dispute about an alleged breach thereof is subject to the Agreement's broad Arbitration Clause and must be arbitrated.

## B. Copyright Infringement

We reach the same conclusion as to plaintiff's copyright claims. In general, copyright infringement claims "are suited for resolution by arbitration." Senisi v. John Wiley & Sons, Inc.,

---

should determine the arbitrability of disputes regarding whether an agreement has terminated. See CPR (USA) Inc. v. Spray, 187 F.3d 245, 255 (2d Cir. 1999), abrogated on other grounds by Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79 (2000) ("The Litton Court specifically instructed lower courts faced with post-expiration disputes to determine whether parties had agreed to arbitrate these disputes - i.e., to determine arbitrability - even if that analysis requires the court to interpret the arbitration agreement, a task normally remitted to an arbitrator under a broad arbitration clause.").

Given this case law and the parties' mutual assumption that the Court should determine arbitrability here, we will do so in the first instance.

No. 13 Civ. 3314 (LTS) (AJP), 2015 WL 256094, at *3 (Jan. 21, 2015); see McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P., 35 F.3d 82, 89 (2d Cir. 1994) ("[W]e find no bar to arbitrating plaintiffs' copyright claim . . . ."); Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 231 (2d Cir. 1982 ("[W]e see no public policy against arbitration of this claim for the infringement of a valid copyright."). Indeed, several courts in this district have compelled arbitration of copyright claims in closely analogous cases where a photographer or group of photographers asserted copyright claims against defendants who allegedly used their photographs beyond the scope permitted by a licensing agreement. See Spinelli, 96 F. Supp. 3d 81, 101-02; Senisi, 2015 WL 256094; Cole v. John Wiley & Sons, Inc., No. 11 Civ. 2090 (DF), 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012), at *3; Cole v. Pearson Educ., Inc., No. 10 Civ 7523 (JFK) (RLE), 2011 WL 4483760, at *6 (S.D.N.Y. Sept. 28, 2011).

For example, in Cole v. John Wiley, plaintiff and defendant had entered into a license agreement that granted defendant certain rights to license five of plaintiff's photographs in exchange for compensation. 2012 WL 3133520, at *1-3. The license agreement contained an arbitration clause. Id. at *3. When plaintiff asserted claims for copyright infringement because defendant published his photographs outside the limitations set forth in the license agreement, the court granted defendant's motion to compel

9

arbitration because the infringement claims were subject to the license agreement's arbitration clause. Id. at *10. Similarly, in Cole v. Pearson, the court held that because, at some point in time, the defendant had "licensed all of the works claimed by the Plaintiff to have been infringed, . . . any dispute about the publication of the licensed photographs [was] a 'dispute in connection' with the license agreements." 2011 WL 4483760, at *6.

These cases are indistinguishable from the case at bar. The Agreement here granted USP the right to license and distribute plaintiff's photography. AC ¶ 15. Plaintiff alleges that defendants infringed his copyrights by licensing and publishing the photographs outside the scope of the Agreement. AC ¶¶ 27-33. Because plaintiff's copyright claims turn on whether defendants' use of the photographs was permitted by the Agreement, these claims "arise under" the Agreement.

Phillips v. Audio Active Ltd., 494 F.3d 378, 390-92 (2d Cir. 2007), cited by plaintiff, does not dictate a different result. Unlike the plaintiff in Phillips, plaintiff here does not "den[y] that the contract has any role or relevance whatever with respect to his copyright claims," and would only be relevant as a defense. Id. at 392. Rather, plaintiff here repeatedly invokes the Agreement in connection with his copyright claims, arguing that defendants' allegedly infringing use was outside the scope of the Agreement. See AC ¶¶ 77-78, 88-89, 95-98.

### C. Unjust Enrichment

"It is well established that unjust enrichment claims fall within the scope of broad arbitration clauses." Spinelli, 96 F. Supp. 3d at 101; see also Genesco, 815 F.2d at 855-56. Plaintiff's unjust enrichment claim is based on an alleged payment obligation under "the law of contracts." Am. Compl. ¶¶ 106-08. As the Agreement is the only contract between the parties referred to in the amended complaint, it is clear that plaintiff's unjust enrichment claim "arises under" the Agreement, and therefore must be arbitrated.

### D. Unfair Competition

Courts also routinely compel arbitration of unfair competition claims. See JLM, 387 F.3d at 182-83; Genesco, 815 F.2d at 855; Norcom Electronics Corp. v. CIM USA Inc., 104 F. Supp. 2d 198, 206 (S.D.N.Y. 2000); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 420, 426 (S.D.N.Y. 1998). Here, plaintiff alleges that defendants are liable for "Unfair Competition in Violation of New York Common Law" because their allegedly unsanctioned use of his photographs "misappropriate[d] and trade[d] upon the fine reputation and goodwill of [plaintiff]." Am. Compl. ¶¶ 110-119. This claim, like the others, is predicated on the allegation that defendants' use of the photographs was not permitted under the Agreement. Because plaintiff's unfair

11

competition claim "arises under" the Agreement, it must also be arbitrated.

### E. Effect of Termination

Plaintiff's primary counterargument is that this matter should not be arbitrated because defendants' actions occurred after the Agreement expired, and the claims in the amended complaint therefore do not fit into the categories of arbitrable post-expiration claims enumerated by the Supreme Court in Litton, 501 U.S. 190. In Litton, the Supreme Court held that post-expiration grievances arise under an expired agreement when: (1) the dispute involves facts and occurrences that arose before expiration; (2) post-expiration action infringes a right that accrued or vested under the agreement; and (3) under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement. Id. at 205-06; see also Newspaper Guild/CWA of Albany v. Hearst Corp., 645 F.3d 527, 530 (2d Cir. 2011).

Plaintiff argues that these categories are exhaustive and that his claims do not fit within any of them. This argument ignores that, under Litton, courts "presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon expiration of the agreement." Litton, 501 U.S. at 208. Instead, there is a "presumption in favor of postexpiration arbitration of matters

12

unless 'negated expressly or by clear implication.'" Id. at 204 (quoting Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 255 (1977).

This presumption is particularly potent where, as here, the Agreement contains a Survival Clause that explicitly states that certain provisions "survive the expiration or termination" of the Agreement. Agreement ¶ 11(k). Plaintiff not only ignores the existence of the Survival Clause, but also fails to identify any provision of the Agreement that would reverse the "presumption in favor of postexpiration arbitration" by "negat[ion]" or "clear implication." See Litton, 501 U.S. at 208. Moreover, the question of whether the Survival Clause applies under these circumstances and whether the Agreement has expired are questions that the Second Circuit requires "we remit . . . to the arbitrator, even after Litton." CPR, 187 F.3d at 256; see Abram Landau Real Estate v. Bevona, 123 F.3d 69, 73 (2d Cir. 1997). "Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision . . . disputes over these matters should be submitted to arbitration." CPR, 187 F.3d at 256 (quoting Abram Landau, 123 F.3d at 73).

13

**F. Equitable Estoppel**

Having determined that plaintiff's claims are subject to arbitration, we must next consider whether SMG and Gannett, as non-signatories to the Agreement, may compel arbitration. "[A] non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126-27 (2d Cir. 2010) (quoting Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d. Cir. 2001)). "[I]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d. Cir. 2008).

Equitable estoppel is often "warranted when a non-signatory defendant owns or controls a signatory defendant," as is the case here. Ross v. Am. Express Co., 547 F.3d 137, 144 (2d Cir. 2008); see, e.g., JLM, 387 F.3d at 177-78; Fraternity Fund Ltd. v. Beacon

14

Hill Asset Mgmt. LLC, 371 F. Supp. 2d 571, 578 (S.D.N.Y. 2005). Plaintiff's amended complaint asserts that SMG is the parent company to USP, Gannett is the parent company to SMG, and that all three companies jointly own and operate the website where USP was permitted to display plaintiff's photographs under the terms of the Agreement. Am. Compl. ¶¶ 6-8.

Courts have also held that "[w]here a plaintiff treats all defendants as a single unit in his complaint, it further supports estopping that plaintiff from shielding himself from arbitrating with certain defendants." Barreto v. JEC II, LLC, No. 16 Civ. 9729 (KBF), 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017) (quoting Victorio v. Sammy's Fishbox Realty Co., No. 14 Civ. 8678 (CM), 2015 WL 2152703, at *17 (S.D.N.Y. May 6, 2015)). Plaintiff treats all three defendants as a single unit throughout the complaint, making no distinction whatsoever between the defendants in his claims for breach of contract, unjust enrichment, and unfair competition. See Am. Compl. ¶¶ 8, 22, 27-29, 31-63, 65-66, 76-85, 88-97, 100-04, 107-09, 112-19. As to the copyright infringement claims, plaintiff's allegations generally target defendants as a single unit, but he further asserts that Gannett is vicariously liable for the infringing acts of its subsidiary co-defendants. Id. ¶¶ 86, 98. This vicarious liability theory is a textbook example of an "intertwined claim" for estoppel purposes. See, e.g., Fraternity Fund, 371 F. Supp. 2d at 578 (applying

15

estoppel where a parent company's "alleged liability is premised solely upon its alleged control of and responsibility for the actions of" a subsidiary).

In sum, the claims against non-signatories SMG and Gannett are factually intertwined with the claims against signatory USP, and the nature of the relationship between the parties estops plaintiff from denying his obligation to arbitrate with all three defendants. See Ragone, 595 F.3d at 128.

### III. CONCLUSION

For the foregoing reasons, defendants' motions to compel arbitration are granted. The action before this Court is stayed pending the outcome of arbitration. See Katz v. Cellco P'ship, 794 F.3d 341 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration . . . ."). The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 32 and 40. Defendants are directed to file a letter on July 7, 2018 and every 60 days thereafter informing the Court of the status of the arbitration.

Dated: New York, New York
May 8, 2018

*NAOMI REICE BUCHWALD*
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:          Sumeer Kakar
                                Kalpana Nagampalli
                                Kakar, P.C.

Counsel for Defendants:         Robert Penchina
                                Al-Amyn Shiraz Sumar
                                Ballard Spahr LLP